# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

OSCAR ARROYO,

      Plaintiff,

v.

                                     Case No. 3:25-cv-327-JRK

FRANK BISIGNANO,
Commissioner of Social Security,[1]

      Defendant.

## OPINION AND ORDER[2]

## I.   Status

Oscar Arroyo ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying his claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is the result of a traumatic brain injury, post-traumatic stress disorder, migraines, neck and back issues including cervical and lumbar spine degenerative arthritis, sleep apnea, problems with both elbows including osteoarthritis and

---

[1]    Frank Bisignano is now the Commissioner of Social Security. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Mr. Bisignano should be substituted as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]    The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Order Regarding Consent to Magistrate Judge Jurisdiction in Social Security Appeals (Doc. No. 117), Case No. 3:21-mc-1-TJC (outlining procedures for consent and Defendant's generalized consent to Magistrate Judge jurisdiction in social security appeals cases); consent by Plaintiff indicated in docket language for Complaint (Doc. No. 1).

strain, left lower extremity radiculopathy of sciatic nerve, and right knee strain. Transcript of Administrative Proceedings (Doc. No. 9; "Tr." or "administrative transcript"), filed May 27, 2025, at 99, 109, 351. Plaintiff protectively filed an application for DIB on September 13, 2022, alleging a disability onset date of July 1, 2022.[3] Tr. at 211-12. The application was denied initially, Tr. at 99-106, 107, 125-28, and upon reconsideration, Tr. at 108, 109-17, 131-33.

On May 1, 2024, an Administrative Law Judge ("ALJ") held a hearing,[4] during which he heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). See Tr. at 70-98. The allotted time for the hearing was expended before the ALJ could ask the VE some hypothetical questions, so a supplemental hearing had to be scheduled. Tr. at 97-98. On September 25, 2024, the ALJ held the supplemental hearing,[5] during which he heard testimony from Plaintiff, who was represented by counsel, and a VE. See Tr. at 48-69. On October 4, 2024, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. See Tr. at 10-35.

---

[3]    Although actually completed on September 14, 2022, see Tr. at 211, the protective filing date for the DIB application is listed elsewhere in the administrative transcript as September 13, 2022, see, e.g., Tr. at 99, 109.

[4]    The hearing was held via telephone "pursuant to Social Security Administration policy." Tr. at 72. Plaintiff did not object to proceeding in this manner. Tr. at 72-73, 136, 176, 184.

[5]    The hearing was held via telephone "pursuant to Social Security Administration policy." Tr. at 50. Plaintiff did not object to proceeding in this manner. Tr. at 50.

Thereafter, Plaintiff sought review of the Decision by the Appeals Council and submitted a brief authored by his lawyer. See Tr. at 4-5 (Appeals Council exhibit list and order), 205-06 (request for review), 429-32 (brief). On January 29, 2025, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On March 27, 2025, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff argues "[t]he ALJ erred by failing to account for the 'total limiting effects' of his 'severe' migraine headaches." Plaintiff's Brief – Social Security (Doc. No. 10; "Pl.'s Br."), filed June 26, 2025, at 1 (emphasis omitted); see id. at 4-12. On July 22, 2025, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 12; "Def.'s Mem.") addressing Plaintiff's argument. Then, on August 5, 2025, Plaintiff's Reply Brief – Social Security (Doc. No. 13; "Reply") was filed. After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be affirmed.

## II.   The ALJ's Decision

When determining whether an individual is disabled,[6] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry. See Tr. at 14-34. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since July 29, 2022, the alleged onset date." Tr. at 14 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following

---

[6]     "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

- 4 -

severe impairments: major joint abnormality; spinal disorder; and migraine headaches." Tr. at 14 (emphasis and citation omitted). At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 23 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work as defined in 20 CFR [§] 404.1567(b) except: occasionally balance, stoop, kneel, crouch, crawl; occasionally climb stairs; should never climb ladders; requires a moderate noise environment; should avoid concentrated exposure to hazards.

Tr. at 23 (emphasis omitted).

At step four, the ALJ relied on the VE's hearing testimony and found that Plaintiff "is capable of performing past relevant work" as a "Personnel Manager." Tr. at 31 (citation omitted). The ALJ then made alternative findings at the fifth and final step of the sequential inquiry. Tr. at 32-33. After considering Plaintiff's age ("52 years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ relied on the VE's testimony and found "there are other jobs that exist in significant numbers in the national economy that [Plaintiff] also can perform," Tr. at 32, such as "Cashier II," "Cleaner (Housekeeping)," "Marker,"

and "Router." Tr. at 33-34. The ALJ concluded Plaintiff "has not been under a disability . . . from July 29, 2022, through the date of th[e D]ecision." Tr. at 34 (emphasis and citation omitted).

## III.    Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is

supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.    Discussion

Plaintiff argues the ALJ erred in "failing to account for the 'total limiting effects' of his 'severe' migraine headaches." Pl.'s Br. at 1 (emphasis omitted); see id. at 4-12; Reply at 1-5. According to Plaintiff, "the ALJ was plainly obligated to consider [his] severe headache impairment according to the requirements of [Social Security Ruling ("SSR")] 19-4p, and he failed to properly do so." Pl.'s Br. at 10. Plaintiff also contends—briefly—that his headache condition should have "le[d] to a finding of disability by analogy to Listing 11.02." Id. Responding, Defendant asserts that the ALJ "thoroughly considered Plaintiff's migraine headaches and reasonably determined that Plaintiff could perform a reduced range of light work with additional environmental limitations." Def.'s Mem. at 1 (emphasis omitted).

At step three, the burden rests on the claimant to prove the existence of a Listing-level impairment. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991). Mere diagnosis of a listed impairment is not sufficient. See, e.g., id.; see also Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002). "To meet a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific

criteria of the Listings and the duration requirement." <u>Wilson</u>, 284 F.3d at 1224 (internal quotations and citations omitted). "To equal a Listing, the medical findings must be at least equal in severity and duration to the listed findings." <u>Id.</u> (internal quotations and citations omitted).

There is no Listing that applies directly to migraine headaches, but the Administration "may find that a primary headache disorder, alone or in combination with another impairment(s), medically equals a listing." Social Security Ruling (SSR) 19-4p, 2019 WL 4169635, *7. Listing 11.02 (epilepsy) is the most analogous listed impairment. <u>See</u> <u>id.</u> SSR 19-4p explains, "While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures) . . . ." <u>Id.</u> Paragraph B of Listing 11.02 requires "dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment. SSR 19-4p, at *7; 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.02. Dyscognitive seizures are characterized by alteration of consciousness without convulsions or loss of muscle control, and blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances) may occur. 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.00H1b. "To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, [the Administration] consider[s]: A detailed

description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations)." SSR 19-4P, at *7.

Paragraph D of Listing 11.02 "requires dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning." SSR 19-4p, at *7; 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.02. "To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in [Paragraph D, the Administration] consider[s] the same factors [it] consider[s] for [Paragraph B]," along with "whether the overall effects of the primary headache disorder on functioning results in marked limitation in: Physical functioning; understanding, remembering, or applying information; interacting

- 9 -

with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself." SSR 19-4p, at *7.

If an individual's "primary headache disorder, alone or in combination with another impairment(s), does not medically equal a listing at step three of the sequential evaluation process, [the Administration] assess[es] the person's [RFC]." Id. at *7. In so doing, the Administration "consider[s] the extent to which the person's impairment-related symptoms are consistent with the evidence in the record." Id. at *8. "Consistency and supportability between reported symptoms and objective medical evidence is key in assessing the RFC." Id.

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)); see also Malak v. Comm'r of Soc. Sec., 131 F.4th 1280, 1287 (11th Cir. 2025). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.2d at 1223.

The Regulations provide that an ALJ "will" consider the following factors related to symptoms such as pain:

> (i) [The claimant's] daily activities; (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms; (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms; (vi) Any measures [the claimant] use[s] or ha[s] used to relieve [his or her] pain or other symptoms . . .; and (vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3)(i)-(vii); see Raper v. Comm'r of Soc. Sec., 89 F.4th 1261, 1277 (11th Cir. 2024). The factors must be considered "in relation to other evidence in the record and whether the claimant's statements conflict with other evidence." Raper, 89 F.4th at 1277 (citation omitted); see 20 C.F.R. § 404.1529(c)(4). To reject the claimant's assertions of subjective symptoms, "explicit and adequate reasons" must be articulated by the ALJ. Wilson, 284 F.3d at 1225; see also Malak, 131 F.4th at 1287; Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), and "is a function-by-function assessment based upon all of the relevant evidence of an

individual's ability to do work-related activities," SSR 96-8P, 1996 WL 374184 at \*3. It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1545(a)(5), 416.945(a)(1). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at \*5; see also Pupo v. Comm'r, Soc. Sec. Admin., 17 F.4th 1054, 1064 (11th Cir. 2021) (citing Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1268 (11th Cir. 2019)); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

Here, Plaintiff reported to the Administration that he suffers from migraine headaches at least four to five times per week that cause nausea, vomiting, blurred vision, and neck pain. Tr. at 327. According to Plaintiff, the headaches last 72 hours, "but sometimes with medication[, he] can reduce the pain." Tr. at 328. At the September 25, 2024 hearing, Plaintiff testified the medication "kind of helps a little bit," but some days, "the migraine's so intense that it will take [him] out for half of the day or sometimes even the whole day." Tr. at 59.

The ALJ at step three considered that two "state agency medical consultants opined the evidence demonstrated [Plaintiff's] allegations of migraine headaches do not equate to listings 11.02B or 11.02D." Tr. at 23 (citing Exs. 1A and 4A, located at Tr. at 99-106, 109-17). The ALJ found "the state agency opinions persuasive as supported by and consistent with the totality of the record evidence." Tr. at 23. Plaintiff does not seriously challenge this finding, and he does not point to evidence that establishes his migraine headaches medically equal Listing 11.02. See Pl.'s Br. at 10-11; SSR 19-4P, at *7. The ALJ's step three finding is supported by substantial evidence.

The ALJ specifically recognized Plaintiff's "testimony concerning migraine headaches." Tr. at 26; see Tr. at 25. The ALJ also specifically referred to SSR 19-4p, noting the evaluation requirements set forth therein for a migraine headache to medically equal Listing 11.02. Tr. at 26-27. The ALJ found: "[s]uch abnormalities in objective examination findings are not documented in the hearing record evidence." Tr. at 27. The ALJ then explained:

> Following a July 11, 2024, examination, [Plaintiff] was described as calm, cooperative, and engaged in conversation with the therapist. [Plaintiff] exhibited adequate grooming and hygiene. [Plaintiff's] cognitive functioning was found to be grossly intact, and his ability to concentrate and his fund of knowledge were described as adequate. [Plaintiff's] speech was coherent and appropriate, with euthymic tone. [Plaintiff's] thought process was linear, and goal directed. [Plaintiff's] thought content was logical (Ex. 18F, pages 7-19).

- 13 -

> During [Plaintiff's] consultative examination with Dr. Auerbach, [Plaintiff] was documented in objective examination findings in no acute distress, alert and oriented, with normal findings of mental status, memory, and speech. Findings concerning [Plaintiff's] reflexes, head and neck were normal (Ex. 5F).
>
> There is no evidence of an organic component that could result in frequent or debilitating headaches. MRI of the brain in 2017 revealed hyperintensities that were possibly indicative of early of mild age-related leukoaraiosis (Ex. 1F, pages 11-14). Given [Plaintiff's] history of alleged headaches, the undersigned limits [Plaintiff] to work with a moderate noise environment. The totality of the objective evidence in the hearing record, including [Plaintiff's] presentation during medical appointments that is detailed in addressing [Plaintiff's] mental health issues, supports finding [Plaintiff's] alleged headaches do not warrant additional limitation.

Tr. at 27; see Tr. at 2286-98; 895-907, 443-46.

Overall, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. at 25. The ALJ's Decision makes clear that he adequately considered Plaintiff's complaints about the migraine headaches and accepted them only to the extent consistent with the RFC. Otherwise, the ALJ found the alleged severity to be inconsistent with the

balance of the evidence, and this finding is supported by substantial evidence in the record.

## V.   Conclusion

The ALJ's Decision is supported by substantial evidence. In light of the foregoing, it is

**ORDERED**:

1.   The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **AFFIRMING** the Commissioner's final decision.

2.   The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on March 13, 2026.

JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies:
Counsel of Record